IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AARON GREENSPAN,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF GOVERNORS OF<br>THE FEDERAL RESERVE<br>SYSTEM,<br>Defendant. | Civil Action No. 21-cv-1968 (TNM) |

### DECLARATION OF BRONWYN ECKHARDT

I, Bronwyn Eckhardt, declare as follows:

1. I am the Chief Compliance Officer for Tudor Investment Corporation ("Tudor"). I submit this Declaration in connection with what I understand to be a FOIA request directed to the Federal Reserve Board (the "Board") by the plaintiff, Aaron Greenspan ("Plaintiff").

2. I have personal knowledge of the matters addressed herein.

3. Tudor is a global investment firm with over $12 billion in assets under management. It is registered with the U.S. Securities & Exchange Commission as an investment adviser, and routinely engages in the business of providing investment advice to clients and managing client funds.

4. Tudor pursues a variety of trading and investment strategies with client funds, including but not limited to "macro" trading and investment strategies that are rooted in Tudor's views of macroeconomic conditions. Specifically, certain of Tudor's trading and investment decisions are based on Tudor's views on inflation, interest rates, foreign exchange rates, wage

1

and employment levels, and other macroeconomic factors.

5. Tudor was founded by Paul Tudor Jones, who is well-known in the industry as a leading "macro" trader. Mr. Jones currently serves as Tudor's Chief Investment Officer.

6. I have been informed that three emails from Tudor to the Board were identified by Board staff as responsive to Plaintiff's FOIA request and were withheld under FOIA exemptions. I have been informed that the first email, dated December 20, 2018, has been identified on the Vaughn Index in this case as document FRB_FOIA F-2021-00128 000267-268; that the second email, dated December 23, 2018, has been identified as document FRB_FOIA F-2021-00128 000269-270; and that the third email, dated January 3, 2019, has been identified as document FRB_FOIA F-2021-00128 000271-272 (collectively, the "Tudor Communications"). I have personally reviewed the Tudor Communications and am familiar with their contents.

7. The Tudor Communications were sent by Tudor to the Board in the ordinary course of Tudor's business.

8. The Tudor Communications contain information that is both commercial and financial in nature. The Tudor Communications contain Tudor's internal assessment of macroeconomic financial conditions, including but not limited to Tudor's views on inflation and interest rates, which directly concerns Tudor's business of managing client funds. Tudor's assessment of macroeconomic factors is central to Tudor's "macro" trading and investment strategies, in which Tudor maintains a strong commercial interest. Tudor uses such assessments to inform its trading and investment decisions, rendering the information contained in the Tudor Communications both commercial and financial in nature.

9. Tudor customarily maintains its internal assessment of macroeconomic conditions in confidence. If Tudor's internal assessments of macroeconomic conditions were public, other traders and investment advisers might seek to replicate, or model, Tudor's trading. This would have a detrimental impact on Tudor's clients and the performance of Tudor client funds. Accordingly, Tudor typically maintains such assessments and evaluations in confidence.

10. Tudor maintains an interest in the confidentiality of the Tudor Communications

2

today, even though the Tudor Communications date to 2018 and 2019, because their public disclosure could enable other traders and market participants to understand how Tudor assesses macro conditions and makes trading and investment decisions.

11. Tudor undertakes various measures to maintain the confidence of its internal assessments of macroeconomic conditions. These measures include, but are not limited to, the implementation and enforcement of a policy, embodied in, *inter alia*, Tudor's Code of Conduct and Ethics and Electronic Communications and Internet Use Policy & Procedure, that all Tudor personnel must maintain in confidence Tudor's trading strategies and proprietary research including, but not limited to, the nature of the analysis reflected in the Tudor Communications.

12. While there are occasions on which Tudor chooses to disclose macroeconomic views to its investors and/or the public, it does so only in limited circumstances and for strategic reasons that Tudor believes advance the interests of Tudor, its clients and its client funds.

13. Tudor did not intend the confidential commercial and financial information contained in the Tudor Communications to become public. Rather, Tudor intended to share such information solely with the Board. It did so voluntarily, for the purpose of assisting the Board in its evaluation of the stability of the U.S. financial system, in furtherance of Tudor's business and commercial interests.

14. In all three of the Tudor Communications, Tudor's communication expressly provides that it "is intended only for the addressee[]", that it "may contain confidential information," that Tudor "does not waive any confidentiality by misdelivery," and that if the communication is received in error, "any use, dissemination, printing or copying is strictly prohibited" and the communication should be "destroy[ed]."

15. Tudor's understanding was that the Board would maintain the confidentiality of the Tudor Communications and not disclose them publicly for any reason, including in connection with a FOIA request.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Bronwyn Eckhardt

_____3/21/2022_____
Date